## Coon and Others *v.* Cook.

A suit for a specific performance operates upon the person, and may properly be instituted in any county where the defendant resides.

The Circuit and Probate Courts had concurrent jurisdiction, under the R. S. 1843, in cases of applications by guardians to sell real estate of their wards.

The R. S. 1843 provided that in all suits and proceedings of which the Circuit and Probate Courts had concurrent jurisdiction, the Court which should first take cognizance thereof should retain such cognizance exclusively, while the same might be pending in such Court.

Where an application was filed in the Probate Court by a guardian to sell real estate of his ward, and a sale was made under the order of such Court, the Circuit Court could not, under the R. S. 1843, upon a tender of the full amount of the purchase-money, take jurisdiction of a suit to compel the execution of a deed in pursuance of the sale.

A guardian appointed by the Probate Court, on account of the infancy of his ward, can not, after the arrival of the ward at full age, continue, under such appointment, to act as guardian, by reason of the insanity of such ward.

Under the R. S. 1843, a person could not be regarded as insane, so as to authorize the appointment of a guardian, unless found to be so by a jury impanneled as therein provided.

A person could not legally act as guardian of an insane person, under the R. S. 1843, until the fact of insanity was established by a jury, in accordance with the statute.

The fact that though the Probate Court appointed a person as guardian on account (as was alleged in the order of appointment) of the infancy of his ward, yet that it always regarded him as guardian of an idiot, is a circumstance of no weight in determining the validity of acts done by him after the arrival of the ward at full age.

*A.* was appointed guardian of *B.*, by the Probate Court, on account of the infancy of *B.*  After *B.* arrived at full age, she being an idiot, *A.*, without having received any other appointment, made application to the Probate Court, as guardian of *B.*, an idiot, to sell her real estate; and, having procured an order, sold the same.  *Held*, that the sale was a nullity.

May Term,
**1855.**

Coon
v.
Cook.

Thursday,
May 31.

APPEAL from the *Henry* Circuit Court.

DAVISON, J.—Bill in chancery by the appellee against *David Hiatt*, *Henry Carroll* and *Conrad Coon*, for a specific performance.

The material facts of this case are these:

One *Nancy Coon* was the owner of a tract of land in *Hancock* county.  She was an insane person, and had been so from her birth, which occurred on the 16th of *November*, 1821.  The Probate Court of *Henry* county, on the 16th of *November*, 1839, appointed *Hiatt* guardian of the person and estate of *Nancy*, who, at that date, was a minor; and the record of his appointment shows that he was so appointed because of her infancy.  In *March*, 1846, *Hiatt*, describing himself as guardian of *Nancy Coon*, an idiot, applied to the Court by petition, wherein he represented, *inter alia*, that it would advance the interest of his ward's estate if the Court would authorize a sale of said land.  The Court, accordingly, at its *May* term, 1846, ordered the same to be sold by the petitioner at private sale, and also directed him to make report, &c.  At the *November* term, 1846, he reported the sale of the land to one *McDaniel*, for 300 dollars, payable in six, twelve and eighteen months.  This report was received and the sale confirmed.  When *McDaniel* bought the land, he gave *Hiatt* three promissory notes for the purchase-money, and received from him a bond for a deed upon full payment of the notes.  After this *McDaniel* sold the same land to *Cook*, the appellee, to whom he assigned the bond, and *Cook* thereupon lifted said notes, and in their stead executed his own for similar amounts.  At the *February* term, 1847, *Hiatt* rendered an account of his guardianship, and resigned the trust; and, on motion, the Court appointed *Henry Carroll* guardian of the said *Nancy*, who, in this order of appointment, is described as an "insane woman."

Before this no inquest was had or ordered whereby she was declared insane. But at the *June* term, 1850, on petition, a jury was impannelled to inquire as to her sanity and capacity, &c., who returned a verdict that she was an idiot, &c.; and the Court having rendered an order to that effect, appointed the said *Conrad Coon* guardian of her person and estate, who was duly qualified. It appeared that while *Hiatt* acted in the capacity of guardian, *Cook* paid him 150 dollars of the purchase-money, and that subsequently he had tendered the balance of it and demanded a deed. It was also shown that *Cook*, pursuant to his purchase, went into possession of the land, and made improvements thereon of value.

The bill prays that the contract may be specifically performed, or otherwise that the defendants may be required to refund the said 150 dollars, with interest, and pay for the improvements, &c., and for general relief.

Upon a final hearing the Circuit Court decreed that *Conrad Coon*, as guardian of the said *Nancy*, should, within ninety days, make a deed to *Cook* for the premises, and in default thereof, that he be attached, &c.

For the reversal of this decree it is contended—

1. That the land in question, being in *Hancock* county, the Circuit Court of *Henry* county had no jurisdiction of the subject-matter in controversy. This objection is not tenable. We concur with the appellee's counsel, that the present, being a suit for a specific performance of a contract, operates on the person and may properly be instituted in any county where the contractor resides.

2. That proceedings for the sale of the land having been commenced in the Probate Court, and that Court having, to some extent, proceeded in the matter and taken jurisdiction, retained it exclusively. In relation to this point, it is said that the present bill for a specific performance is an original suit, and does not assume to take jurisdiction of any matter pending in the Probate Court. The code of 1843 applies to this case. It provides, that "in all suits and proceedings of which the Circuit and Probate Courts shall have concurrent jurisdiction, the Court which shall

first take cognizance thereof shall retain such cognizance exclusively while the same may be pending in such Court." And "to authorize guardians to sell and convey any real estate of their wards," is one of the cases under the statute in which said Courts have such concurrent jurisdiction. R. S. 1843, c. 39, ss. 6 and 8.

From this it seems to us that the decree can not be sustained, because it is evident that proceedings to sell and convey this land were first instituted in the Probate Court. That Court having confirmed the sale, is expressly directed to order a deed to be executed and delivered to the vendee, upon the payment of all the purchase-money. *Id.*, c. 35, s. 117. Indeed the several statutory provisions relative to the sale of real estate by guardians, contemplates each step, from the petition to the order directing a deed to be made to the purchaser, as part of the same proceeding; and such proceeding evidently continues undisposed of in the Court that first takes cognizance of it, until a deed is actually made and delivered to the purchaser. If this view be correct, it follows that the Circuit Court, in the case before it, had no power to grant relief.

3. That the order directing the sale was a nullity, because, at the time it was made, *Nancy Coon* was of full age and had no legal guardian. This objection leads us to inquire, whether a guardian appointed on account of infancy, can, after his ward arrives at full age, continue, under such appointment, to act as guardian of the same ward because he is insane. To some extent, the respective duties of guardians for minors and insane persons are similar; but the mode of ascertaining the necessity of a guardian for an insane person is quite different from that of a minor. When *Hiatt* was appointed, his ward was just eighteen years old. At that time, she does not appear to have been represented as insane. The order of the Probate Court is very explicit. It reads thus: "Ordered, that *David Hiatt* be and he is hereby appointed guardian of *Nancy Coon*, infant, and minor heir of *John Coon*, deceased." This appointment, of course, ceased to exist when her minority ceased; and that event occurred on the

16th of *November*, 1842. In point of fact, she was then insane; but that circumstance could not prevent her arrival at full age. There is no legitimate rule of construction that would extend the force of the above order of appointment beyond the last-named period, except so far as a settlement of the trust might require. It is true that *Hiatt*, in his application for the sale, describes himself as "guardian for *Nancy Coon*, an idiot;" but the proof is that no such trust was ever conferred upon him. The order directing the sale of the premises was made in *May*, 1846. The revision of 1843 was then in force, and its provisions relative to insane persons were clearly applicable. Under these provisions no one could, in point of law, be regarded insane, unless found to be so by a jury impanneled in pursuance of the statute. R. S. 1843, p. 609.

But it is said that the act of 1838, under which *Hiatt* was appointed, did not require an inquisition to establish the idiocy before the Court could appoint a guardian. The answer to this is, that the Court did not appoint him because she was insane, but on account of her infancy. Nor does it appear that her insanity was a matter of inquiry before the Court when the order of appointment was made. R. S. 1838, p. 193.

Again, it is insisted that though *Nancy* is characterized in the record as an infant, at the time of his appointment, he was ever regarded by the Court as the guardian of an idiot. We perceive no force in that position. The mere fact that the Probate Court erroneously permitted *Hiatt* to act without authority, can have no weight in the decision of this cause. Admit, as contended, that the sale was made in good faith, at a fair price, and to an innocent purchaser, still it was made in violation of law. *Nancy Coon*, at the time, was of full age. No proper tribunal had declared her unable, in point of capacity, to dispose of her own property, and no one could legally act as her guardian.

The contract of sale was, therefore, a nullity, and the decree for a specific performance must be considered erroneous.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, &c.

*W. Grose*, for the appellants.
*M. L. Bundy*, for the appellee.