ALEX. A. HIGGINBOTHAM, et. al., v. ALICE A. THOMAS.

1. GUARDIAN; *Record of Appointment.* An appointment of a guardian must be made of record.

2. ———— *Sales of Ward's Property.* A sale of real estate made by a person as guardian of the estate of a minor, when the records show that no such appointment was made, is not valid and binding in law.

3. PROBATE RECORDS; *Nunc pro tunc Orders.* A nunc pro tunc order of the probate court made on the 29th of December 1869, appointing a person guardian of the estate of a minor, to take effect as of the 5th day of August 1859, and many years after such person had been removed from his guardianship of the person and estate of said minor in another state, and without notice to the former ward, is of no validity.

*Error from Leavenworth District Court.*

EJECTMENT, brought by *Mrs. Alice A. Thomas* to recover the possession of Lot 15, Block 48, in the city of Leavenworth, and for the rents, issues and profits of said lot. Plaintiff claimed possession as owner in fee simple. Defendant *Higginbotham* claimed title in fee, alleging a sale by plaintiff's guardian, in July 1863, to the German M. E.

Church of Leavenworth, and a sale and conveyance by the trustees of said church to *Higginbotham* in February 1865. The other defendants claim under *Higginbotham.* Defendants allege a payment by the church to plaintiff's guardian of $1,200 for said lot, and that since their purchase defendants have made large and valuable improvements thereon. The record shows that one Malcolm Clark died in April 1855; that at the time of his death he owned and held "certificates of purchase" for -fifty-five city lots in the city of Leavenworth, including the lot in controversy in this action; that said lots were parts of the "Delaware Trust Cession;" that Clark's wife had died in the year 1854; that plaintiff was born April 15, 1850, and was the legitimate child of said Malcolm Clark, and his sole heir; that the lot in controversy was patented September 15th 1864 to "the heirs of Malcolm Clark, deceased." The record also shows that after her father's death. plaintiff resided in the family of John W. Williams, in Platte county, Missouri, until she was sixteen or seventeen years of age; that Williams' wife was a half-sister of plaintiff, (daughter of plaintiff's mother by a former marriage;) that in November 1858 said Williams was, by the probate court of said Platte county, Missouri, appointed the "guardian of the person and estate of Alice A. Clark, a minor," etc., and "heir of Malcolm Clark, deceased;" that he gave a bond as such guardian in the sum of $10,000, with three sureties; that in May 1859 he gave an additional bond in the sum of $60,000, with the same three and two other sureties; and that plaintiff had no property or 'estate in Platte county, Missouri. The record contains the following affidavit, which was given in evidence on the part of defendants:

TERRITORY OF KANSAS, ⎫ ss.
　LEAVENWORTH COUNTY, ⎭

In the Honorable Probate Court within and for said county:

John W. Williams, present in said court, being first duly sworn deposeth and saith that Alice A. Clark, with whom he is well acquainted, is now between eight and nine years old,

and resides with the said affiant in the county of Platte, in the state of Missouri; that the said Alice A. Clark is the sole and only heir-at-law of Malcolm Clark, deceased; and that the said John W. Williams is the legally and lawfully constituted guardian of the person and estate of the said Alice A. Clark; that nothing has as yet ever come into his hands as such guardian belonging to said estate of Malcolm Clark, nor to the said Alice; * * * that consequently he has never filed any inventory as such guardian, neither to the probate court of Platte county, in the State of Missouri, nor in the probate court of Leavenworth county, in Kansas Territory; that the said Alice A. Clark, of whose person and estate said affiant is guardian, is the same identical Alice A. Clark, who is the sole and only heir-at-law of the said Malcolm Clark, deceased. J. W. WILLIAMS.

Subscribed and sworn before me, this 5th of August, 1859.
J. W. GARDINER, Probate Judge.

This affidavit was filed in the Leavenworth probate court, August 5th 1859. On the 8th of said August Williams made and filed another affidavit in said Leavenworth probate court, wherein he "deposeth and saith that he will faithfully demean himself as guardian of the person and estate of Alice A. Clark, and that he will make true and perfect inventory of any and all personal and real estate belonging to the said Alice, which may come to his possession, and duly and faithfully account for the same according to law." On the 5th of October 1859 said Williams filed in said probate court an inventory and appraisement of said fifty-five city lots—the aggregate appraisement amounting to $16,270—and an inventory and appraisement of personal estate amounting to $4,312. Other proceedings in the probate court of Leavenworth county, so far as material, are mentioned and set forth in the opinion of the court. The record shows a sale and disposal of a considerable portion of the plaintiff's property by said Williams, and that in 1866, (being then more than fourteen years of age,) plaintiff went before the probate court of Platte county, Missouri, and terminated Williams' guardianship by choosing "Alfred W. Hughes as her guardian," who was "accordingly appointed guardian of her person and

estate." After attaining her majority (eighteen years of age, in Missouri and Kansas,) the plaintiff commenced a suit in the circuit court of Platte county, Missouri, against Williams and his sureties, upon the last bond given by him as her guardian, to recover such of her moneys and property as he had received and not accounted for; but afterward, in April 1869, she dismissed said suit, and executed a release to Williams' sureties, naming them, in which she says—"I do hereby fully release and discharge the said" sureties, "and each of them, from any and all liabilities as such sureties, and I hereby declare and acknowledge the bond by which they are bound as such sureties, *as to them,* satisfied." The attorney who drew up the release testifies that "She just remarked to me that she desired me to draw up such an instrument for her to sign and execute. She told me that she knew Williams was behind with her, but she regarded him as an honest man; but he was then very poor, and her sister was poor, and they were both anxious she should execute such a paper, and she desired to do so."

This action was commenced in August 1869, and was tried at the November Term 1869. The court instructed the jury to find for the plaintiff, which was done, and judgment rendered in her favor for the recovery of the possession of the lot in controversy. A new trial was refused, and *Higginbotham* and his co-defendants bring the case here by petition in error.

*Stillings & Fenlon,* for plaintiffs in error:

1. It is objected that there is no sufficient showing that Williams was appointed guardian by the probate court of Leavenworth county. He filed a transcript of his Missouri appointment, and his bond of May 21st 1859, in the office of the probate court of Leavenworth county, and on the 5th of August 1859 filed, in the form of an affidavit, his application for authority to act as guardian under the laws of Kansas, and on the 8th of said August filed his affidavit, qualifying as such guardian. He also filed an inventory and

appraisement, made settlements, and acted as her guardian under the authority of said probate court. The appointment was drawn up by the judge, but through some oversight not entered on the journals, but as we claim sufficiently appears by the *nunc pro tunc* order. That these *nunc pro tunc* orders are binding and conclusive as to the appointment, we refer to 2 H., 319; 16 H., 571; 2 Tidd Pr., 932; 4 Wheaton, 518, 714; 1 Taunton, 384; 14 Peters, 147; 3 McLean, 383; 6 Ohio St., 237; 15 Conn., 423; 1 Johns. Cas., 408; 1 Bar., 146, 219; 19 Ohio, 88, 147; 5 Ind., 228.

Williams filed his affidavit, in connection with the transcript, showing that the ward had no property in Missouri, and that therefore no inventory could be made there. This the court held sufficient. The law in force at the time of the filing of this transcript authorized its filing: Laws 1855, §§ 1, 2, pp. 398, 399. If the first sale was good, of course the judgment should be reversed, but if not, the plaintiff in error is not estopped by the recitals in his deed to show the other order in support of the sale. *Glover v. Ruffin*, 6 Ohio, 255.

The appointment of the guardian by the probate court of Leavenworth county, and the adjudication of his qualification to act on the proof furnished of his appointment and bond in the court of another state, are adjudications of the probate court of Leavenworth county, which are binding till reversed. 1 Phillips on Ev., 344; Cow. & Hill's Notes, 617, 618; 1 R. L., 445, § 5; 1 Mill. & San., 18; 2 Peters, 163; 7 Cowen, 353; 2 Robb's, Va., 192; 12 Peters, 705; 1 Hill, 130; 3 Ed. Ch., 327; 1 Eq. Dig., 479, § 75.

2. But aside from this, the recognition of Williams as the guardian, the filing of inventories, and the frequent adjudications of the court, are matters necessarily finding him to be the guardian, and sufficient to show his authority, without the same being formally entered. He made two sales (to the same parties) of the lot in controversy, under license of

the probate court, and executed his deed as guardian, and said sales were confirmed.

The statute under which the sale was made, ch. 106, § 10, Comp. Laws of 1862, p. 577, authorized the sale to be made by the guardian under the direction of the probate court; and by § 17 the rules for the sale of real estate by executors, etc., shall be observed *as far as applicable.* The act relating to sales, ch. 91, § 136, was amended by the law of 1867, making sales which had not conformed thereto, as to notice, valid. Laws of 1867, p. 96, § 1. The report of sale was made in due form, and confirmed by the court, the deed ordered and made; and the sale thus made has been allowed to stand, and the ward to get the benefit of it, and the present parties to become purchasers, relying on the judgments and judicial proceedings of the proper court on a subject within its juris- diction, and over parties over whom it had acquired jurisdiction. We claim that the order of sale and confirmation are adjudica- tions which cannot be inquired into in this collateral proceeding. We refer to 15 Texas, 366, 557; 3 Grant, Pa., 42; 10 Peters, 449, 472; 2 Howard, 340; 3 Wallace, 396; 24 Iowa, 217; 2 Ohio St., 339; 20 Vt., 205; 6 H., 261; 13 Pick., 269; 13 Ohio, 518; 1 Smith's Lead. Cas., 837, 848, and notes; 11 S. & R., 426; 4 Johns., 467; 4 Zabriskie, 467; 19 Ohio, 88, 104; Cooley on Cons. Lim., 409; 6 Mich., 506; 29 N. Y., 106.

It will be presumed the requisite bond was given after confirmation, as the confirmation is a necessary finding that all the pre-requisites have been complied with: 12 Ohio, 195. All things are presumed to be rightly and duly per- formed till the contrary is shown. A failure to give bond in exact compliance with the statute will not vitiate a sale: 9 Dana, 525; 14 Ind., 334; 19 Ill., 295; 28 Ala., 164, 218; 1 Duvall, 339; 12 Smedes & Marshall, 9; 17 Iowa, 210; 49 Penn. St., 143; 7 B. Mon., 152.

This was a proceeding *in rem,* in which the filing of the petition gave the court jurisdiction to determine every fact, including that of service on the minor; 2 Howard, 338; 12 Peters, 718, 623; 17 Mo., 450. In such proceeding there

are no adversary parties; 11 S. & R., 430, 449. The proceedings of such courts will be construed liberally; 4 B. & Ald., 105; 14 Pet., 458. Even a judgment which is informal or without pleadings is not void; and the record may be shown by papers and entries on file; 4 H., 155, 15 Ohio, 546.

3. The probate court is a court of record, and its proceedings import absolute verity; 16 Ohio St., 455. The court has power at any time to amend its records, so as to make them speak the truth. 2 Wallace Jr., 569; 1 Binney, 172; 5 Watts, 319; 12 Penn., 215; 7 S. & R., 180; 2 Penn. St., 339.

Besides this, the statute at the time authorized the court to make the record complete by making the *nunc pro tunc* entry. Gen. Stat., p. 471, § 210.

4. The guardian having sold this property as the property of the ward, the subsequent issue of the patent to the ward is for the benefit of the purchaser. 2 Ohio, 401, 408; 1 Greenl. Ev., § 109.

5. The acts of the plaintiff after coming of age, in her dealings with her guardian, and with the funds in his hands arising from this and other sales, with full knowledge that he had in her behalf sold this property, were such that the jury might properly have found a ratification of the sale on her part; yet this was all taken from the jury by the instructions of the court. Comp. Laws of 1862, page 720, § 2; 5 B. Mon., 362; 14 Ohio, 229.

The defendant in error would be required to refund the money, in order to disaffirm the sale, even if no order of sale had been made: 2 U. S. D., page 60, § 40; Hopk., 337–42; Civil Code, § 613, Gen. Stat., 753; 1 Eq. Dig., 587, § 104.

*Clough & Wheat*, for defendant in error. [No brief on file —and reporter has been unable to procure a copy.]

The opinion of the court was delivered by

KINGMAN, C. J.: This is an action brought by the defendant in error to recover a lot in Leavenworth. She is the sole heir of Malcolm Clark deceased, and is entitled to recover

unless her title as such heir has been divested by the sale and conveyance of her alleged guardian, John W. Williams. On the trial the court directed the jury to find for the plaintiff, who is now defendant in error. From the verdict rendered under this instruction, and a judgment in pursuance thereof, the plaintiff in error appeals to this court. The circumstances of the case are such that the judgment of the court will not be affirmed without a critical examination of the grounds on which it rests, and a clear conviction that it is the law. If that conclusion is reached, then no consideration of the hardships of the decision can affect the action of the court. It may be proper also to say, that we are not insensible of the importance, as a matter of public policy, of upholding sales made by guardians and personal representatives whenever it can be done under the law. If such sales are generally held good, that fact increases the competition at the sales by enlarging the circle of bidders, by inviting the attention of a class who buy for use and are generally willing to pay a fair price; while if such sales are of doubtful validity, only speculative and chancing men are ready to invest at prices that justify the risk. Therefore it is for the interest of those whose estates have to be disposed of in this manner, that the public generally should have confidence in the validity of the titles acquired.

The first objection to the title of plaintiff in error is, that there is no valid appointment of John W. Williams in this state. The evidence shows the appointment of Williams as guardian of the person and estate of Alice A. Clark by the probate court of Platte county, in the state of Missouri, on the 1st of November 1858, and a bond filed in said court on the 4th of the same month, and an additional bond approved May 2d 1859. Other proceedings of the probate court of Platte county were in evidence, which it is not necessary to indicate, but showing that Williams continued to act as guardian there until the 5th of January 1866, when he was removed, and Alfred W. Hughes appointed in his stead. On the 5th of August 1859 Williams filed in the probate court

of Leavenworth county an affidavit that he was the guardian of Alice A. Clark; that she was between eight and nine years of age, and resided with him in Platte county, Missouri; that nothing had come into his hands as such guardian, and consequently he had filed no inventory of the estate of his ward in Missouri or elsewhere. On the 8th of August 1859 Williams filed his oath of office as guardian, and on the 5th of October 1859 an inventory of the estate of Alice A. Clark, which consisted largely of lots in the city of Leavenworth. On the 18th of May 1860 he made a settlement as guardian in the probate court of Leavenworth county, and on the 4th of March 1861 he procured an order of sale for such lots as in his opinion it would be for the interest of the ward to sell. He was authorized to sell at private sale "to the amount of $3,000 or $4,000." On the 6th of March he reported the sale of the lot in controversy, which report was approved, and it was ordered that the guardian file a bond conditioned as required by law, and make a deed for the lot. No bond was given. On the 23d of July 1862 the guardian filed a petition for the sale of real estate, and the court authorized him to sell at private sale enough of the property to realize the sum of twenty-five hundred dollars, requiring him before selling to execute a bond in the penal sum of five thousand dollars, with security to be approved by the court. On the same day the guardian reported the sale of certain lots including the lot in controversy, whereupon the court approved the sale and ordered a deed to be made, and a deed was made accordingly for this lot—the sale being made to the same parties that were reported purchasers at a previous sale of the same lot.

On the 29th of December 1869 the following order was made in the probate court of Leavenworth county:

STATE OF KANSAS, LEAVENWORTH COUNTY, ss.—In the Probate Court sitting in and for said county—October Term, Wednesday, December 29, 1869.

In the matter of John W. Williams, Guardian of the Person and Estate of Alice A. Clark, a minor.

It appearing to the court that on the 5th of August 1859,

at a term of this court then in session, the following order and judgment was made by said court, and drawn up and filed with the papers herein, but by an oversight was not copied in the journals of this court, and that the same should be entered in the journals of this court, to take effect as the judgment of this court of said date, in order to make a complete record herein, it is ordered by the court that the same be entered on the journals of this court, and that the same take effect as of said 5th day of August, 1859, which judgment and order is in the words and figures following:

"ESTATE OF ALICE A. CLARK, a minor. Application of —— Williams, to be appointed Guardian of the Estate of said minor.

"It appearing to the court upon petition of —— Williams, that said Alice A. Clark is a minor under the age of fourteen years, non-resident of this Territory, and residing in the county of Platte, and state of Missouri, and that said minor has property, real and personal, within this county; and it further appearing in the said petition that the said —— Williams has been duly appointed by the probate judge of the said county of Platte, the guardian of the person and estate of the said minor; and the said Williams having produced to this court a copy of the order of his said appointment, certified and authenticated according to law, it is ordered that the said —— Williams be, and is hereby, appointed the guardian of said non-resident minor, for the purpose of selling or otherwise controlling the property of the said minor, under and by virtue of orders which may from time to time be made by this court. And the said —— Williams having filed an authenticated copy of the bonds filed by said guardian, in the state of Missouri, and fully accounted for not having filed an inventory in said foreign state, and the court being satisfied with the sufficiency of the amount of the security, the filing of an additional bond is hereby dispensed with."

This *nunc pro tunc* order is the only one that shows that Williams was authorized in this state to act as guardian. There is a succession of orders in the probate court, some of which are referred to above, showing that he assumed to act as guardian, and that his acts therein were recognized by the court. But before he could assume to act in the matter of disposing of the real estate of a minor, he must actually have had the authority. This position is not questioned. It is asserted that he had the authority, but by oversight the same had not been formally entered upon the record, and that the court had authority to make the record show the fact by the *nunc pro tunc* order above recited. The principle asserted is a very grave one, and not free from doubt. It is certainly a wide reach of power, to authorize a probate court, more than ten years after such an order is claimed to have been made,

22

to enter an order that shall reach back and cover the actions of the intermediate years, affecting the rights to property, the liability of sureties on a bond, and all the relations of the minor during that period. But great and perilous as is the power thus claimed, it is not necessary in this case to decide upon its existence. It is enough for us to say that if the power exists it does not in this case grow out of § 178, page 294, Gen. Stat., for that section only permits the "*immediate successor*" of an ex-officer to complete the records of his predecessor. The record shows that several persons had held the office of probate-judge of Leavenworth county between the time when this order is claimed to have been made, and the entry of the *nunc pro tunc* order in December 1869. Nor do we think the proceeding could have been justified under § 201, page 471, Gen. Stat., for it can hardly be claimed that a memorandum, not filed or signed, and which is incomplete and imperfect in itself, can be considered as one of the papers of the court, such as will authorize the court to go back more than ten years and declare it a record for all that time, and on his own motion, without notice, make it a record. Such a power is not found in the language of the section referred to; and to strain its language, by giving it such a construction in this case, would lead to endless confusion and great wrong. It is not doubted that the power of the court to enter a *nunc pro tunc* order without express statutory provision exists. It is only the power to make the record disclose the truth in a matter in which right and justice may demand it. This power is however subject to such limitations and restrictions as experience has shown were necessary to prevent its abuse. Whether such an order was proper in the present case need not be determined. Such an order, vitally affecting the rights of others, should never be made without notice to those to be affected thereby. In England such orders are made only upon a rule; Tidd's Pr., 489, 532, 533; 54 Eng. Com. Law R., 970; and we have found no case in this country where such orders are made without a rule, or upon due notice, except in those cases where there has been

an appeal, and pending the appeal, where the case has been held under advisement, if either party die then the judgment is entered *nunc pro tunc*, "that the delay arising from the act of the court may not turn to the prejudice of the party." Tidd, 932. In all the other cases referred to by counsel for plaintiff in error, where such an order has been made, notice was given and an opportunity offered to contest the action of the court, and to take an appeal. The principle and the reason of it are stated by Ch. Justice Hornblower in *The New Jersey Turnpike Co. v. Hall*, 2 Harr., 337, as follows: "Whenever a court, or any person acting under legal authority, is to act judicially, or exercise a discretion in a matter affecting the rights of another, the party thus to be affected is to have reasonable notice of the time and place when and where such act is to be done, to the end that he may be heard in defense, or for the protection of those rights." The authorities cited by the defendant in error show the application of the rule in almost every kind of proceeding.

It would be difficult to imagine a case where in common justice a notice was more imperatively required than in this order. More than ten years had elapsed since it is claimed the proceedings were had. The guardian had long ceased to be such in Missouri, had never given any bond in this state, the ward had become of age, and had long before commenced the action in which the order was to be read in evidence. It would be a grave injustice to sanction such action by holding it valid, for however much we may desire to so rule in this particular case as to promote what seems to us the equity of the case, we cannot forget that we are also fixing rules for a large class of cases. To allow the probate court to make *nunc pro tunc* orders, *ex parte*, without restriction as to the character of the order, or the time in which it may be made, and with no one present but the interested attorney, would inevitably open the door to a practice dangerous to the great interests confided to that court. We cannot do it in the face of reason and authority. Perhaps no better illustration of the danger of such a cause could be suggested, than the record

discloses: On the 22d of July 1862 John W. Williams and his attorney appeared in the probate court, and procured an order to be made making Williams the guardian from the 5th of July 1859, of the *person* and estate of Alice A. Clark. Thus, without a bond, or notice, a man was appointed to a position of great trust, and from the nature of the appointment the sureties on the bond in Missouri would not be liable. It is not claimed that this appointment had any validity. There was much evidence as to notice, but it is so plain that no notice was given that the question is not open to doubt. On the evening before the order was made one of the attorneys for the plaintiff in error in this case told one of the attorneys for the defendant in error that an application would be made the next morning, but was then informed that the attorney was not employed by defendant in error in that matter; and this is shown to be true in the evidence. This was no notice to any one, much less to Mrs. Thomas.

It is claimed in argument that the recognition of Williams as the guardian, the filing of inventories, and the frequent adjudications of the court, are matters necessarily finding him to be the guardian, and are sufficient to show his authority without the appointment being entered of record. It may readily be conceded that in a suit against the pretended guardian the various orders obtained by him, and his acts, would be sufficient to establish his character as guardian, because he would thereby be estopped from denying that he acted in such capacity, and consequently estopped from denying his liability for his acts as such. Again, if the records were lost, such acts would *prima facie* establish the fact that such an appointment had been made. That is, they would be facts tending to show that an appointment of record had been made. In this case it is conclusively shown that no appointment had been made of record, and therefore no inference can be drawn from the facts to support such a conclusion; and to this extent is the decision in *Shawhan v. Loffer*, 24 Iowa, 217. In a case involving a similar principle in Massachusetts the court say that to draw an inference that an order had been made, from

subsequent ones, would "be as irregular as it would be for a common-law court to issue an execution without any evidence of a judgment except what might be contained in the execution:" *Chase v. Hathaway*, 14 Mass., 226. See also *Hutchins v. Johnson*, 12 Conn., 376. "The guardian derives his authority from his appointment which is of record:" *Maxon v. Sawyer*, 12 Ohio, 195. *Coon v. Cook*, 6 Ind., 268, is a case showing that subsequent orders cannot be used to show that a previous one had been made; and so is *Makepeace v. Lukens*, 27 Ind., 435.

It is claimed that the defendant in error, after coming of age, ratified the sale by her acts; but we fail to see in the record any evidence that ought to be of the slightest weight as tending to show a ratification. It is true, that immediately after arriving of age an attorney who had been very busy in obtaining orders for the sale of her property took her around in his buggy, pointing out the lots that had been sold and those that still remained to her; but there is no word that indicates her approval or disapproval of the sales made. Under the circumstances any approval would have been of little or no consequence, but there was none. The record also fails to show that one dollar of the purchase-money ever came into her hands. It is true that Williams testifies that a part of it was used for her maintenance and education while she was still an infant, but such use cannot be tortured into a ratification of the sale. About the time the defendant in error came of age she signed a paper releasing the sureties on the guardian's bond in Missouri from any responsibility to her by reason thereof. It is claimed that this was a recognition of Williams as guardian. There is much testimony as to whether this release was made before or after defendant in error was of age. Without analyzing the evidence on this point we assume that she was of age when she signed it, and that the release was valid and binding; and still we are unable to see how it affects this case. If it be held that it is a solemn and binding recognition that Williams was guardian, it is only that he was guardian in Missouri, and in no way

estops her from denying that he was guardian in Kansas. It lacks other essential elements of an estoppel, not necessary now to designate. The conclusion we have reached on this point of the case renders it unnecessary to examine the other defects in the sale by the pretended guardian, although one of them at least would probably prove as fatal to the plaintiff in error as the one decided.

There being no basis for the pretended sale, the court correctly instructed the jury to find for the plaintiff, the defendant in error here, and the judgment is affirmed.

VALENTINE, J., concurring.

BREWER, J., not sitting in this case.