No. 8019.

Gray et al. *v.* The State, ex rel. Mills.

Estoppel.—*Guardian and Ward.—Bond.—Sureties.*—The sureties upon a guardian's bond, executed by them and their principal to obtain an order to sell real estate of his wards, after he has sold the real estate and received the money, are estopped to deny that their principal had in fact been appointed guardian of such wards.

Gray *et al. v.* The State, *ex rel.* Mills.

From the Hamilton Circuit Court.

*T. J. Kane, T. P. Davis, W. Garver, R. Graham, A. F. Shirts, G. Shirts* and *W. R. Fertig,* for appellants.

*R. R. Stephenson,* for appellee.

BEST, C.—The facts out of which this controversy arises are briefly these: At the January term, 1870, of the common pleas court of Hamilton county, Indiana, the appellant Elisha Mills, as guardian of Frank A. Mills, the relator, and Clara M. Mills, his sister, filed his application to sell their real estate, caused it to be appraised, and, upon the order of the court, executed his bond, with his co-appellants as his sureties, and upon its approval obtained an order to sell such real estate, which he subsequently did for the sum of $2,340. After the relator attained full age, he brought this suit upon the bond to recover such portion of one-half of such sum as remained unexpended. Issues were formed, and upon the trial the appellants Gray and Baker offered to prove that Elisha Mills, the principal in said bond, was not in fact the guardian of Frank A. and Clara M. Mills, when the bond was executed. This the court excluded, on the ground that they were estopped by the execution of the bond to prove such fact. This question was properly saved, and is the only one discussed by appellants in their brief.

The bond is as follows:

"Know all men by these presents, that we, Elisha Mills, Joseph R. Gray and Nehemiah H. Baker, are bound unto the State of Indiana, in the penal sum of four thousand dollars ($4,000), to pay which we jointly and severally bind ourselves, our heirs, executors and administrators. Sealed and dated this 28th day of January, 1870.

"The condition of the above obligation is, that as the above bound Elisha Mills, guardian of Frank A. Mills and Clara M. Mills, minor heirs of Martha A. Wren, deceased, has been ordered by the court of common pleas of Hamilton county to sell certain real estate of the said wards. Now, if the said

Elisha Mills will faithfully discharge the duties of his trust according to law, then the above obligation is to be void, else to remain in full force in law.     ELISHA MILLS, [SEAL.]
                                          "J. R. GRAY,      [SEAL.]
                                          "N. H. BAKER.   [SEAL.]"

This bond was executed in conformity with the provisions of our statutes, was authorized by them, and is conceded to be a valid and binding obligation unless the appellants can show that Elisha Mills was not in fact the guardian of the relator. Can they do this? We think not. After having joined him in the bond, recited the relation he sustained to the relator, enabled him to procure the order, sell the land and obtain the money, nothing but a meritorious defence should exonerate them from the obligations of their bond. All the facts necessary to create an estoppel are present. The bond was executed, the recital made, the order procured and the money of the relator obtained, and to allow the appellants to avoid its payment by a denial of their own recital would result in such manifest injustice that no court, it seems to us, ought to hesitate in applying the doctrine of estoppel in exclusion of such defence. The appellants, however, say that the entire proceeding was a nullity; that the relator's title to the land was not divested by such pretended sale, and that the money realized therefrom was not the money of the relator, but of the "would-be purchaser."

In support of this position, the case of *Coon* v. *Cook*, 6 Ind. 268, is cited. The case does not support them. In that case a pretended guardian obtained an order to sell the real estate of a person of unsound mind, made the sale, obtained the money, and afterward the assignee of the purchaser brought an action against the guardian of such person subsequently appointed to enforce the specific performance of such contract, obtained a decree, and, on appeal, this court held such contract a nullity. Upon the facts stated, as between the parties to that suit, the decision was unquestionably right; and if this was an action by the purchaser to obtain a conveyance, or

by the relator to recover or quiet his title to the land, the case cited would be decisive of the rights of the parties. This is not, however, such a case. The relator, by the institution of this suit, does not question either the regularity or the legality of such sale, but, on the contrary, if such objections exist, waives them all and affirms the sale. This he may do, and, although he can not convey the title by election or estoppel, yet he can affirm the sale, take the purchase-money, and thus preclude himself from claiming the land. The acceptance of the purchase-money, arising from an invalid sale, affirms the sale and estops the party from questioning its validity. This rule applies as well to void sales made by guardians as by others. Deford v. Mercer, 24 Iowa, 118.

If, then, the principal on the bond was not, in fact, the guardian of the relator, and this fact renders the sale void as between the relator and the purchaser, the acceptance of the purchase-money will estop the relator from questioning the sale, and as to him it will be treated as valid. The relator, having the right to affirm the sale, and having brought this suit in affirmance of it, we think, as between the parties to this record on the question of estoppel, the sale must be treated as valid, and the money arising therefrom as belonging to him.

Again, to assume that the relator's title to the land was not divested by such sale, and the money arising therefrom did not belong to him, in order to avoid the estoppel, is assuming the truth of just such facts as the estoppel precludes the appellants from proving. The estoppel can not be avoided in this way. If it could, it would follow that a party could thus reap the benefit of such facts as the estoppel is invoked to exclude.

Nor can it be avoided by the fact that the relator may reclaim his land. If so, it only proves that he has another remedy. This, however, may not be so adequate, and to compel him to resort to it not only deprives him of an election between inconsistent remedies, but may result in actual loss

to him.   In this case, the land may have been sold for its full value ; the interest may largely exceed the rents and profits ; the land may have depreciated in value ; the rents and profits may be beyond recovery, and the land itself may be in the possession of those who will not surrender it without a contest.   These considerations, and others that will readily suggest themselves, show that a denial of the facts recited in the bond will deprive the relator of substantial rights under it, which he can not otherwise assert or enforce, and to deprive him of them is a sufficient reason for excluding the defence.

The appellants also insist that the bond is invalid, and for that reason they are not estopped.

If so, we agree with them, as an invalid instrument does not work an estoppel.   Such as have been taken in violation of law, or have been procured by fraud or duress, for instance. This bond was not so procured, nor was it taken in violation of law.   The law authorized its execution, and as there is nothing about the bond indicating its invalidity, we know of no reason why it should not be treated as valid in determining whether or not its makers should be estopped to dispute its recitals.   If the recitals are true, the bond is valid, and we think that, for the purpose of determining whether its recitals can be disputed, it must be regarded as valid.   To regard it otherwise, is to successfully contradict its recitals before it has been decided that it can be done.   This is not the law ; otherwise every recital in every instrument could be disputed with impunity.

Indeed, the very reasons urged against its validity furnish the strongest argument in favor of the estoppel.   If the appellants are allowed to dispute their recital, the relator will lose his money and the purchaser his land.   On the other hand, if the proof is excluded, justice will be done to all and injury to none.   The relator will be secured, the purchaser protected, and the bond enforced, precisely as it would be were the facts as recited.   To avoid similar results, the doctrine of estoppel was adopted, and to avoid these, we think, it should be applied.

Upon principle it seems to us, the appellants ought to be estopped, but they insist it has been held otherwise in the case of *Thomas* v. *Burrus*, 23 Miss. 550.

In this case a guardian had been appointed, and while such appointment remained unrevoked the court appointed another, and in a suit upon the bond of the latter it was held that the appointment of the first exhausted the power of the court, and for that reason the appointment of the latter was void. In support of this conclusion the cases of *Griffith* v. *Frazier*, 8 Cranch, 9; *Bledsoe* v. *Britt*, 6 Yerg. 458, and *Lewis' Ex'rs* v. *Brooks*, 6 Yerg. 167, were cited. They fully support the conclusion, in which we concur, but an examination of them shows that no question of estoppel arose in either of them. In each, a right was asserted through such appointment.

In *Griffith* v. *Frazier*, an administrator was appointed while another who had been formerly appointed was administering, and in a suit for the recovery of land the defendant claimed title through such appointment, and it was held that such appointment was void.

The case of *Bledsoe* v. *Britt* was an action of assumpsit by the latter as guardian, and it was held, as the wards had a guardian when the plaintiff was appointed, her appointment was void.

In *Lewis' Ex'rs* v. *Brooks*, John, Robert and Arthur Brooks had been appointed administrators, and as such had recovered a judgment against the executors of Lewis for $3,000. Arthur Brooks died, and John F. Stump was appointed administrator *de bonis non*. Afterward, Stump compromised with the executors of Lewis, and John and Robert Brooks disregarding such compromise, the question arose as to its validity. This depended upon the legality of his appointment, and it was held, that as an administration is an entire thing, and as John and Robert Brooks were the administrators of such estate when Stump was appointed, his appointment was void.

The question of the legality of these several appointments was involved in these cases, and was correctly decided, but it

does not, therefore, follow that if these suits had been upon the bonds of the several persons whose appointments were held void, the same thing would have been decided, or that the question would have arisen.

The case of *Thomas* v. *Burrus, supra,* not only decided that such appointment was void, but held that the surety was not estopped from showing it. The court said the doctrine of estoppel " presupposes a valid or legal obligation, and we do not know any authority, and reason certainly is against the position, that a party is estopped by any recital contained in an instrument from showing, that the instrument containing it is absolutely null and void," and concluded by saying that, if the court had no power to accept the bond, its acceptance fixed no liability upon the surety. It is clear that the cases cited do not support the court's conclusion, and, so far as we know, no case does. If the instrument is invalid, of course it can not work an estoppel, but its invalidity can not be shown by disputing its recitals. It must otherwise appear. It did not otherwise appear in such case, and therefore we do not feel like following it.

On the other hand, several authorities support the conclusion we have reached.

In *Cutler* v. *Dickinson,* 8 Pick. 386, where there was no evidence of the administrator's appointment except such as appeared from the bond, it was held that the obligors were estopped to deny his appointment.

The case of *Shroyer* v. *Richmond,* 16 Ohio State, 455, was a suit upon a guardian's bond. The sureties insisted that the guardian's appointment was illegal. The court held that they were estopped, and said: " By executing this bond, they obtained for their principal the possession and control of his ward's property, and can not now be permitted to escape liability to account therefor, by denying the recitals of their own bond. They are estopped to do so."

The case of *Fridge* v. *The State,* 3 Gill & Johnson, 103, was a suit upon a guardian's bond, in which the surety urged

the invalidity of the principal's appointment as a defence, and it was held that he was estopped. The court say: "Owen Dorsey having given his bond, in which he is stated to be the guardian of E. A. K., and having obtained possession of her property, it would not, in a suit against him, have lain in his mouth to deny that he was guardian, in the very face of the recital in his bond, or to set up any supposed irregularity in obtaining the appointment; the recital in the bond being evidence as against him, that he was guardian. Nor does it lie in the mouth of his surety, against whom the recital is equally evidence."

*Norton* v. *Miller*, 25 Arkansas, 108, was a suit upon a guardian's bond, and the invalidity of the appointment was urged as a defence. The court held that although the appointment was irregular, it having been made in the wrong county, the principal and his sureties were estopped by the recitals in the bond to raise the objection.

The case of *Iredell* v. *Barbee*, 9 Ired. 250, was a suit upon the bond of the guardian of an insane person. The law did not authorize the appointment unless it had been found by a jury that such person was a lunatic or an idiot, and, as it was not so found, it was insisted that the bond was void. The court said: "It is true, the court had not power to appoint King the guardian of Mrs. Fann and authorize him to take her estate into his possession, but the defendant will not be heard to make this objection; he concurred in the act; his bond solemnly asserts that. * * And after King has taken the estate into possession and wasted it, it is not for him to say, that it was unlawful, and, therefore, that he is not bound by his undertaking deliberately entered into."

These cases, we think, decisive of the question under discussion. It is true that in some of them appointments had been irregularly made, but this fact does not impair the force of such cases as authority upon the question. The obligors in such cases were estopped, not because of an irregular appointment, but because the bond recited the fact that an

appointment had been made. In the case first above cited there was no proof of an appointment, and in the case last above cited the court was not authorized to appoint, yet it was held that the makers of such bonds were estopped to deny the fact of appointment. These cases are very analogous.

Again: In *Collins* v. *Mitchell*, 5 Florida, 364, it was held that the sureties upon a sheriff's bond were estopped to deny that their principal was sheriff when the bond was made, though he was dead, the principal's name having been signed by another. If dead, of course he was not sheriff; still the sureties were bound. And we think the appellants are bound, though their principal had not in fact been appointed the guardian of the relator.

The appellants also refer us to the following cases in support of their position, viz.: *Pryor* v. *Downey*, 50 Cal. 388; *Perry* v. *Brainard*, 11 Ohio, 442; *Higginbotham* v. *Thomas*, 9 Kan. 328.

We have examined them and find that no question of estoppel was involved in either of them. Each was an action of ejectment. In the first, title was claimed through an administrator's sale; in the others, through guardian sales. In the first, it was held that the sale was void because the pretended administrator had not been appointed; in the last, because such guardian had not been appointed; and in the other, because the sale was made after the ward arrived at full age. In none of them did the persons making the sales have any authority to make them, and therefore no title could be derived through them. This is in accordance with what was decided in *Coon* v. *Cook, supra,* and is in entire harmony with the conclusion we have reached.

Upon principle and upon authority, the ruling of the court below was right, and the judgment should therefore be affirmed.

PER CURIAM.—It is therefore ordered that upon the fore-

going opinion the judgment be, and it is hereby, in all things affirmed.

Opinion filed at May term, 1881.
Petition for a rehearing overruled at November term, 1881.