Davis, J.
We do not decide the question, mooted in this case, whether the probate court of Franklin county might admit to probate the will of a testator domiciled in another state, in any other way than by admitting to record an authenticated copy of the will, executed and proved according to the laws of the state where the testator was domiciled; but in order to make entirely clear the grounds upon which the judgment of this court is placed it is deemed proper to define the general jurisdiction of the probate court. By the constitution it is made a court *156 of record, and it is declared that it shall have jurisdiction in probate and testamentary matters, the appointment of administrators and guardians, and the settlement of accounts of executors, administrators and guardians. Constitution, Art. 4, Secs. 7 and 8. Prima facie, then, whatever is done by the probate court in these matters is done by the proper authority or tribunal. Following the provisions of the constitution, the general assembly has provided, Revised Statutes, section 524, that the probate court shall have exclusive jurisdiction to take the proof of wills, and to admit to record authenticated copies of wills, executed, proved, and allowed in the courts of any other state, territory or country; to grant and revoke letters testamentary and of administration; and to direct and control the conduct and to settle the accounts of executors and administrators, and to order the distribution of estates. These statutory provisions do not, and can not, limit or enlarge the. jurisdiction of the probate court in the matters mentioned. Whatever is done, therefore, by the probate court in the matters of probate of wills, appointment of executors and administrators and directing and controlling the accounting of such executors and administrators is presumptively within the jurisdiction of the court. To use the language of this court in Shroyer v. Richmond, 16 Ohio St., 455, paragraph 7 of the syllabus, “the record showing nothing to the contrary, it will be conclusively presumed, in all collateral proceedings, that such order was made upon full proof of all the facts necessary to authorize it.” Just.here, however, inasmuch as the application for letters testamentary, the journal entry admitting the will to probate and the *157 recitals in the bond, all describe the will as the last will and testament of Margaret H. Fleming, “late of Brooke county, West Virginia, deceased,” the plaintiffs in error insist that on the face of the record it appears that the probate of the will, the appointment of the executor, the approval of the bond, and all subsequent proceedings were void, the testatrix being a non-resident of the state.
We have consulted all of the standard dictionaries of the English language and' several of the best law dictionaries, and we do not find that the word “late” is ever used in the sense of last, but always, when used as here, in the sense of recently or for-: merly. We have found but one case, Beckett v. Selover, 7 Cal., 215, in which it seems to have been construed in the sense of “last,” while in Holmes v. Custance, 12 Ves. Jr., 279, where the description was “Robert Holmes, late of Norwich,” Sir, William Grant, Master of the Rolls, said: “Everyone knows that the sense of date’ is not recently, but formerly, of Norwich.” So that it cannot be said here, with certainty, that the record impeaches itself by clearly showing that the testatrix was not a resident of the jurisdiction which admitted her will to probate and appointed an executor thereof. We cannot know what evidence may have been adduced in the probate court of Franklin county, Ohio, to show that the last residence of the testatrix was within the jurisdiction of the court. Neither the verity of the record nor the jurisdiction of the court to do what it did do, was challenged in any direct proceeding. Gan it be done now in this action? This is an action by a legatee under the will against the executor and his sureties, on the executor’s bond. *158 The recital of the bond, which is in due form, is that Ripley C. Hoffman has been appointed, by the pro* bate court of Franklin county, Ohio, executor of tJie last will and testament of Margaret H. Fleming. One of the conditions of the bond is that the “said Ripley C. Hoffman as executor as aforesaid shall administer according to law and the will of the testator” all her goods, chattels, rights and credits, etc. Thus-the facts that Margaret H. Fleming died leaving a will and that Ripley C. Hoffman, the principal in the bond, was the executor of that will, are formally" stated and made the basis of the contract. As was said by this court long ago, “In cases where the condition of a deed has reference to any particular thing, the obligor shall be estopped to say there is no such thing.” For example, if a condition be that a man and his wife shall do an act, the man will be estopped to say he has no wife; or if the condition be to perform the covenants of an indenture, the obligor is estopped to say there is no indenture. Douglass v. Scott, 5 Ohio, 194, 198; Herman on Estoppel, Secs. 634, 636. The obligors cannot be allowed to blow hot and cold; in one breath obtaining control of the estate by «vouching for the official character of the principal, recognizing the will under which he was appointed and holding themselves bound for due administration according to law and the will, and in the next breath denying the will and fiduciary relation of the principal and maladministering the property of legatees with impunity. It does not lie in their mouths to say that there was no legal validity in the acts by which they obtained the possession of the property. Their bond, given under the order of, and approved by, the court, gave color to the execu *159 torship of Hoffman, and after the estate has been administered by him for years, under the orders of the court appointing him, and in accordance with the will, until a deficit occurs, it is too late for the obligors on the executor’s bond to say that the court had no jurisdiction to probate the will or to appoint the executor; that there is no will and that there never was an executor. Kelly v. State, 25 Ohio St., 567, 577, 578.
Nevertheless the counsel for the plaintiff in error strenuously and ably argue that the sureties may-show that the appointment of the executor was without jurisdiction, unauthorized by law and void, and that they may thus be discharged from liability on their bond. It is not to be denied that this position has some support among reported cases, notably in Mississippi and Georgia; but it seems to us that the weight of authority is distinctly and overwhelmingly against it. Indeed, if the doctrine of estoppel may be applied to sureties on an administration bond, or a guardian’s bond, so that by its recitals they may not be allowed to deny that their principal has been duly appointed (Bigelow on Estoppel, 373; Herman on Estoppel, Sec. 634), it is difficult to perceive how a want of jurisdiction in the appointing court could alter the rule. The effect of the recitals is just the same, and it would be just as inequitable not to estop the obligors in the case where the appointment was made without jurisdiction, and assets obtained thereby, as in a case where it was made irregularly by a wrongful exercise of jurisdiction. Accordingly it was said in New York that “the execution of the bond precludes both principals and sureties from gainsaying the surrogate’s jurisdiction in any pro *160 eeedings for the assets which the appointment and bond enabled the principal to receive.” People v. Falconer, 2 Sandf. 81, 83; (Superior Ct.) approved in Johnston v. Smith, 25 Hun (N. Y.), 171. In Harbaugh v. Albertson, 102 Ind., 69, when in replevin proceedings before a justice of the peace, a surety on the replevin bond by his execution thereof enabled the plaintiffs in the replevin to obtain the possession of the property in controversy, it was held that “the surety should be estopped from setting up as a defense to an action on the bond, that the justice before whom the action was commenced, had no jurisdiction over the persons of the parties.”
In McCord v. Fisher’s Heirs, 13 Mon. (B.), 193, it was held that an administration granted in a different county from that in which the decedent was domiciled at his death, and in which the decedent had no estate, conferred no authority; but that a bond given by such administrator is binding upon him and his sureties, not as a statutory, but as a common law, bond, being upon good consideration and not against the policy of the law. In Iredell v. Barbee, 9 Iredell (N. C.), 250, it was held that where a court has no power to appoint a guardian, but does appoint one, and he gives bond with sureties and takes possession of the estate of the ward, it is not competent for any of the obligors in such bond to object to its validity on the ground of want of power in the court to make the appointment.
In McDermott v. Isbell, 4 Cal., 113, the Supreme Court of California held that “a party who avails himself of the process of an inferior court cannot escape the responsibility of his own act upon the ground that such tribunal has no jurisdiction over *161 the subject-matter in controversy. Consequently a party who sues out a wait of replevin from a justice of the peace having no jurisdiction, and obtains property, in an action on the replevin bond cannot set up as a defense the want of jurisdiction of the justice. Neither can he be allowed to show that the property so replevined was his own. The conditions of the bond are to prosecute the suit with success or to return the property.”
It ivas held in Arkansas, Norton v. Miller, 25 Ark., 108, that it is irregular and erroneous for the probate court of one county to appoint a guardian for minors who reside with their property in another county; and that both the principal and the sureties on the guardian’s bond are estopped from denying the truth of the recitals in the bond that the principal ivas appointed and that they will not be permitted to deny the jurisdiction of the court making the appointment.
In Cutler v. Dickinson, 8 Pick., 386, it appeared on examining the records of the probate office, that there was no decree, nor any other evidence of the appointment of the administrator; yet in a suit on the bond ©f the administrator it wras held that the obligors were estopped to deny that the principal vas appointed administrator.
In Pennsylvania, where an act of assembly prohibits registers from granting original letters of administration on the estates of persons who have been dead twmnty-one years, unless ordered by a register’s court, it wras held that letters of administration granted in violation of this act were not absolutely void to all intents and purposes, and that, notwith.sfáuding such prohibition, an administrator acting *162 under such letters and his sureties, are liable on their bond to the parties interested in the estate. The court, per Lowrie, C. J., say: “Even if we should regard the letters as void, as affecting the estate, we should not regard them as void, as affecting the accountability of the persons acting under them. We should then treat the administrator as a usurper, and his sureties as aiding him in his acts, and then we would not allow them to set up the usurpation as a protection against accountability for it; for a man cannot take advantage of his own wrong, or set it up as a defense.” Foster v. Commonwealth, 35 Pa. St., 148. This case was followed in Shalter and Ebling’s Appeal, 43 Pa. St., 83.
The People v. Norton, 9 N. Y., 176, was a case in which a court having general jurisdiction of all cases of trust made an irregular and erroneous appointment of a trustee, no notice of the proceeding having been given to the ee_stuis que trust, and this was set up as a defense in an action on the trustee’s bond. The court, per Buggies, C. J., said that: “This is an objection which neither the trustee nor his surety can be allowed to make. Lynch (the trustee) got possession of the trust estate under the proceedings by color of which he claimed to be trustee, and Norton voluntarily undertook as his surety that he should faithfully administer the trust. If the proceeding was irregular for want of notice to the children of Mrs. Lynch, they might object to it in a proper manner for that cause; but Lynch, after having obtained the property upon the pretense, of being the trustee, cannot be permitted to deny his liability to account as such. The, defendant who became his surety in order *163 that he might take the trust property, is for a like reason precluded from denying Ms liability as surety.” This case was cited with approval in Bassett v. Crafts, 129 Mass., 513, in which it was held that the sureties on a trustee’s bond, cannot in an action against them on the bond, impeach the validity of the principal’s appointment.
In Gray v. State, 78 Ind., 68, upon an extended review of authorities, it was held that the surety on a guardian’s bond, executed to enable him to sell his ward’s real estate, is estopped, after the sale and receipt of the money, to deny the appointment of the guardian. The same doctrine runs through the following cases: Fridge v. State, 3 Gill & Johnson (Md.), 103; People v. Huson, 78 Cal., 154; Middleton v. State, 120 Ind., 166; Williamson v. Woodman, 73 Me., 163; State v. Stark, 75 Mo., 566; Mayor v. Harrison, 30 N. J. L., 73.
In conclusion, it seems to me that the decision of this court in Shroyer v. Richmond, 16 Ohio St., 455, is decisive of this case, in more than one aspect of it. That was also an action upon a bond, the bond of a guardian. In that case also the general jurisdiction of the probate court was not attacked, but it Was claimed that the appointment was made without authority of law; and in that case also it was claimed that the bond was invalid because the appointment itself was a nullity. On the trial, “to maintain the issues on their part, the defendants offered to prove to the jury, by parol testimony, that at the time of the appointment of Coblentz and Shroyer respectively, as guardians of Long, he was neither a minor, á lunatic, insane person, an *164 idiot, nor a deaf and dumb person, incapable of taking charge of his affairs; and that there was no testimony offered before the court, at the time of making of either of said appointments, to show that Long was a minor, lunatic, insane person, idiot, or deaf and dumb person, incapable of taking charge of his affairs ; and that he was not brought before the court; and that there was no jury summoned by the court, nor inquest held by the jury, nor a jury sworn for that purpose, nor any testimony offered, before a jury os the judge, to show that he was a deaf and dumb person, incapable of taking charge of his affairs; nor any verdict of a jury finding him to be such a person.” In other words, the defendants, the sureties on the bond, while conceding that the probate court was the proper tribunal to appoint guardians, just as in this case it is the proper tribunal for the probate of wills and the appointment of executors, yet claimed that the statutes in relation to the appointment of guardians had not been complied with, as it is claimed here. Yet in that case the court held, as already noted in this opinion, that “an order made by a probate court, in the exercise of jurisdiction, cannot be collaterally impeached. The record showing nothing to the contrary, it will be conclusively presumed, in all collateral proceedings, that such order was made upon full proof of all the facts necessary to authorize it.” It will be noted that the language of the court is “in the exercise of jurisdiction,” not in the proper exercise of jurisdiction. It was further held that “in a suit on a guardian’s bond, containing a recital of the appointment of such guardian by the proper authority, the obligors are estoppéd to deny the fact *165 thus recited, or to question the validity of the appointment.” The phrase “the proper authority” in the syllabus, was evidently not intended to limit application of the rule as to estoppel, but was used rather with reference to the facts of the case; for Scott, J., ih the opinion says: “This bond recites the appointment of Coblentz, by the proper authority, as guardian of Long. By executing this bond, they obtained for their principal the possession and control of his ward’s property, and cannot now be permitted to escape liability to account therefor by denying the recitals of their own bond. They are estopped to do so.” Evidently it was in the mind of the court that the obtaining of possession of assets through the medium of a court which had general jurisdiction over the subject-matter, although it may have been improperly, or even unlawfully, exercised, gave color to the alleged appointment of the guardian and aided in the perpetration of a wrong which should be prevented by estoppel. And that in our opinion is precisely the situation in this case.
See also State v. Piatt, 15 Ohio, 15, in which it was held that where a clerk of the court of common pleas had been appointed, had given bond and had entered upon the duties of his office, neither he nor his sureties could show that he had failed to qualify by taking the oath of office; and that they will not be permitted to defend themselves upon the ground that he was a mere usurper.
Our conclusion- is that, both upon reason and authority, the plaintiffs in error should be estopped, from questioning the rights of the defendant in error under the will, and from disputing the validity of the *166 appointment of Hoffman as executor, and from denying tbeir liability as sureties on the executor’s bond. The judgment of the circuit court, reversing the judgment of the court of common pleas, is

Affirmed,

Burket, Shauck and Price, JJ., concur.