IN RE CLARENCE M. SIMMONS By S. B. FRINK, Guardian.

(Filed 12 January, 1962.)

1. Insane Persons § 2—

The fact that notice was served on a person only some half-hour before the hearing in which he was adjudged incompetent is in itself insufficient to invalidate the adjudication, the incompetent being present at the hearing and being examined by the jury, and no request for a continuance having been made.

2. Same—

Where neither the incompetent nor persons acting for him have challenged the validity of the adjudication of his mental incapacity, the proceeding being regular on its face, strangers to the proceeding may not collaterally attack the adjudication and the appointment of a guardian pursuant thereto, nor challenge the right of the guardian to institute proceedings to preserve the incompetent's estate.

3. Guardian and Ward §§ 2, 4;    Insane Persons § 4;    Judicial Sales § 5—

A person appointed guardian of a minor has no authority to act for his ward after the ward has attained his majority, even though the ward is at that time and remains thereafter mentally incompetent, and, after the ward has attained his majority, such guardian has no authority to seek the sanction of the court for sale of the ward's property, nor has the court authority to authorize a sale on petition of such guardian, and the sale may be set aside on motion in the cause, the lack of authority not appearing on the face of the record.

4. Same—

Where a person purporting to act as guardian for a minor or insane person in petitioning for sale of lands of the ward, acts not in the interest of the ward but for a third person, and sells the lands for a gross-

ly inadequate price, the sale is voidable and is properly set aside on motion in the cause upon evidence disclosing the facts, and such sale becomes void when vacated and can pass no title to the purchaser.

**5. Appeal and Error § 49;   Judgments § 27—**

Where, upon the hearing of a motion to set aside an order there is abundant and competent evidence to sustain a finding by the court, the fact that other evidence of doubtful competency was also admitted is not ground for disturbing the result, since it will be presumed that incompetent evidence was disregarded by the court in making its decision.

APPEAL by S. B. Frink, guardian, H. O. Peterson, Paul Brown and wife, Mary Brown, and Henry Smith, respondents, from *Craven, S.J.*, July 1961 Special Term of Brunswick.

In April 1961 Clarence Moody Johnson, acting through his guardian, Ernest Hewett, filed with the clerk of the Superior Court of Brunswick County a petition to vacate and set aside an order made by the clerk of the Superior Court of Brunswick County on 15 April 1942 in a proceeding as here captioned, which order, approved and confirmed by the judge then presiding over the courts of Brunswick County, authorized Frink, called guardian, to sell the lands of Clarence M. Johnson.

The facts alleged by Hewett, as guardian for Clarence Moody Johnson, hereafter designated as movant, to support the prayer for relief are summarily stated: Movant is and has been since birth *non compos mentis*. He is the son of Lena Simmons. He and his brother William Simmons were legally adopted by A. J. Johnson and wife, Mary M., in 1920. The surname was then changed from Simmons to Johnson. Mary M. Johnson died testate on 3 September 1922, owning four contiguous tracts containing 240.7 acres. Movant was, in 1942, the owner of this land, having acquired title by the will of Mrs. Johnson and by descent from his brother, likewise a devisee of Mrs. Johnson. On 12 November 1937 Frink applied for the appointment of a guardian for "Clarence Johnson, alias Clarence M. Simmons . . . To the end, therefore, that the estate of the said minor orphan may be preserved and managed according to law . . ." Frink was thereupon appointed as guardian for the minor. Movant was an adult when this proceeding was instituted in March 1942. Frink has not been his guardian since movant reached his majority. The petition filed by Frink, purporting to act as guardian, did not disclose the interest of his alleged ward in the lands nor the value of his interest therein. The court made no findings of fact with respect to the estate or value of movant's interest in the properties. The sum of $15, recited as having been offered, was wholly and grossly inadequate. The facts alleged in the petition filed by Frink did not warrant or authorize any sale of the interest of movant. Frink,

purporting to act under the order signed by the clerk in 1942, executed a deed to H. O. Peterson, Sr. for the purported sum of $15. Peterson knew movant, knew his mental condition, and took the deed from Frink as guardian with knowledge of movant's good title. Movant was adjudged *non compos mentis* in September 1960. Ernest Hewett was then appointed and is now acting as guardian for movant. Hewett acted diligently in seeking to avoid the sale made in 1942.

Notice of the motion with a copy thereof was served on respondents Peterson, Brown, and Smith. Frink and Peterson answered the petition. They admitted Mrs. Johnson owned the lands described at her death, that she died testate, that movant and his brother were legally adopted. They denied movant was the owner of the lands in 1942 when the petition was filed to sell, asserting the land had, prior thereto, been sold for nonpayment of taxes. They denied movant was *non compos mentis*. They alleged Frink had not been removed as guardian and was legally acting as such when the petition to sell was filed in 1942. They deny any irregularity in the proceeding which authorized the sale or in the conveyance executed pursuant to the order of court, and the asserted diligence of movant. Brown and wife appeared. They adopted as their own the answer of Frink and Peterson. Smith, although served with process, did not appear until after the hearing in the Superior Court.

The motion was heard by the clerk in May 1961. Concluding the order of sale entered 15 April 1942 was valid, he denied the motion. Movant appealed to the Superior Court. Judge Craven heard the evidence offered by the parties, found the facts substantially as alleged by movant, specifically finding:

"XXI. S. B. Frink, called as witness by the movant, testified and upon his testimony, the Court now finds as a fact that he had never before seen the said Clarence Moody Johnson prior to the hearing on appeal of this motion in the cause; that at the time the said S. B. Frink instituted Special Proceeding No. 53, he neither knew the mental state nor condition of the said Clarence Moody Johnson (referred to as Clarence M. Simmons in said proceeding) nor his age; that he never knew the nature, extent or value of said Clarence Moody Johnson's interest or estate in the lands, said lands being the same lands as is described in paragraph II of this motion in the cause; that he never received payment of the $15.00 referred to in the above mentioned order of the Clerk, and that he never filed any report of the proceeds of the sale to the Superior Court of Brunswick County as directed by Judge Thompson and that S. B. Frink acted for and relied upon an attorney, now deceased, in preparation of the proceeding.

XXII. That on and at all times after the filing in Special Proceeding

No. 53 by S. B. Frink of the said petition therein dated March 23, 1942, Clarence Moody Johnson was, has been, and is a mental defective without intellectual understanding and unable rationally to transact business matters or to understand the nature and extent of his property and his rights of ownership incident thereto.

"XXIII. Prior to the appointment of Ernest Hewett on September 12, 1960, no other guardian for Clarence Moody Johnson has been appointed except the appointment of S. B. Frink on November 12, 1937, as above mentioned."

Based on his findings, Judge Craven concluded that Frink was not guardian for movant in March 1942 when the petition to sell was filed, the guardianship having terminated because Clarence Moody Johnson had attained his majority. Based on his findings and conclusions, he rendered judgment awarding movant the relief prayed for.

The record shows exceptions to the findings of fact and conclusions of law filed by H. O. Peterson, Paul Brown and wife, Mary Brown, and by Henry Smith, who had not theretofore appeared or participated in the proceeding. These parties appealed. The record does not disclose any exceptions filed by Frink either to the findings of fact or conclusions of law, nor did he, so far as the record discloses, appeal from the judgment. He is designated as one of the respondents assigning error. Henry Smith is not named as one of the respondents who assigned error. Notwithstanding the record, a brief has been filed here designated as "Brief of S. B. FRINK, H. O. PETERSON, PAUL BROWN and wife, and HENRY SMITH, RESPONDENT APPELLANTS."

For the purpose of this appeal we treat those named on the brief as appellants.

*A. H. Gainey, James A. Bowman, Fletcher, Lake & Boyce for movant appellee.*
*S. Bunn Frink and Isaac C. Wright for respondent appellants.*

RODMAN, J. Appellants propound seven questions, each of which they say must be answered in the affirmative to sustain the judgment.

The first is: Was Hewett's appointment as guardian invalid? They contend the record establishes the inquisition in lunacy was a nullity because notice of hearing was not served on the alleged incompetent until 4 p.m. and the hearing was had at 4:30 p.m. on the same date. This short interval of time deprived Johnson of an opportunity to prepare his defense and establish his mental competency, and because of this lack of time in which to prepare a defense, the adjudication with respect to his mental competency was a nullity. True the record

shows that notice was served on Johnson at 4 p.m., and the time set for the hearing was 4:30 p.m.; but it also shows that Johnson was present at the hearing and examined by the jury. There is nothing to suggest that he requested a delay for the purpose of establishing his mental capacity. His failure to request a continuance when he had the opportunity to do so was a waiver of his right. *Collins v. Highway Com.*, 237 N.C. 277, 74 S.E. 2d 709.

Although adjudged incompetent on 12 September 1960, the date on which Hewett was appointed as guardian, the record contains no suggestion that Johnson has ever since that date complained of the manner in which the hearing was had with respect to his mental condition. The proceeding was regular on its face. Appellants cannot collaterally attack Hewett's appointment. *Arrington v. Short*, 10 N.C. 71; *Bethea v. McLennon*, 23 N.C. 523; *In re Propst*, 144 N.C. 562; Anno. 23 A.L.R. 606; 25 Am. Jur. 35; 39 C.J.S. 59.

The court found Johnson lacking in mental capacity to transact business, a condition existing prior to March 1942 and continuing until the hearing in 1961. The finding is supported by the evidence. Based on that finding, appellants should not now be permitted to challenge Hewett's effort to preserve for the incompetent his estate. *Moore v. Lewis*, 250 N.C. 77, 108 S.E. 2d 26; *Smith v. Smith*, 106 N.C. 498.

The next five questions propounded may be merged and reduced to this question: Do the facts alleged and found suffice to support the judgment vacating the order of sale? The answer is yes.

It is alleged and found that Johnson reached his majority prior to March 1942. Frink was appointed as guardian in November 1937 because Johnson was then a minor. The evidence is sufficient to support these allegations and findings. There is no evidence to the contrary. Frink testified he did not recall having ever seen movant prior to July 1961 and did not know how old he was in 1942.

When one is appointed as guardian for a minor, his right to act terminates when the ward reaches his majority. *Melton v. McKesson*, 35 N.C. 475; *Adams v. Adams*, 212 N.C. 337, 193 S.E. 661; 39 C.J.S. 62; 25 Am. Jur. 37.

*Coon et al. v. Cook*, 6 Ind. 268, bears a remarkable factual similarity to this case. There the court, in 1839, appointed one Hiatt guardian for Nancy Coon, a minor 18 years of age. She reached her majority in November 1842. She was then insane. After she reached her majority, her guardian obtained an order authorizing a sale of her property. The Supreme Court of Indiana said: "When Hiatt was appointed, his ward was just eighteen years old. At that time, she does not appear to have been represented as insane. The order of the Probate Court is very explicit. It reads thus: 'Ordered, that *David Hiatt*

be and he is hereby appointed guardian of *Nancy Coon,* infant, and minor heir of *John Coon,* deceased.' This appointment, of course, ceased to exist when her minority ceased; and that event occurred on the 16th of *November,* 1842. In point of fact, she was then insane; but that circumstance could not prevent her arrival at full age. There is no legitimate rule of construction that would extend the force of the above order of appointment beyond the last-named period, except so far as a settlement of the trust might require."

Frink as guardian was, in 1942, *functus officio,* totally lacking in authority to seek court authority for a sale of movant's property. Because of such want of authority to act for movant, the court acted improperly in authorizing the sale.

The power of a court to act on an unauthorized appearance was fully and carefully considered in *Howard v. Boyce,* 254 N.C. 255, 118 S.E. 2d 897. There *Moore, J.,* reviewed at length prior decisions of this Court. No good purpose could be served by another review of the authorities. No plausible reason has been advanced why we would reverse the conclusion then reached that a court cannot authorize a sale or other disposition of one's properties upon application of one who has no authority to request the disposition, and when want of authority appears on the face of the record, the judgment is void; but when lack of authority does not appear on the face of the record, a motion in the cause is the proper procedure to obtain relief.

Not only was the court warranted in vacating the order of sale because Frink was, at the time he filed the petition, without authority to act; but if then the duly authorized guardian, the facts stated in Finding XXI were of themselves sufficient to support the judgment.

A guardian must in fact act *for* his ward. Here it is established Frink was not acting for his ward but *"acted for* and relied upon an attorney, now deceased, in preparation of the proceeding." (Emphasis added.) For whom was this other attorney acting? Why should he seek a sale of the property for less than a dime per acre? The law to be applied to these facts has been declared in many cases. The application is illustrated in *White v. Osborne,* 251 N.C. 56, 110 S.E. 2d 449; *Hall v. Shippers Express,* 234 N.C. 38, 65 S.E. 2d 333; *Butler v. Winston,* 223 N.C. 421, 27 S.E. 2d 124; *Cobb v. Fountain,* 187 N.C. 335, 121 S.E. 614; *Hughes v. Pritchard,* 153 N.C. 135, 69 S.E. 3; *Moore v. Gidney,* 75 N.C. 34.

The final question propounded by appellants is stated thus: "Are affidavits admissible instead of witnesses being examined subject to cross-examination?" While the brief does not specify the affidavits claimed to be incompetent, we assume the question is directed to four affidavits stating the opinion of affiants that movant was incompetent

and had been incompetent since birth. No argument is advanced in support of the question propounded. The affidavits supplement plenary parol testimony to the same effect given by witnesses cross-examined at length by appellants. Conceding but not deciding that these affidavits ought to have been excluded, appellants' assignment of error does not warrant another hearing. As said by *Parker, J.,* in quoting from Annotated Cases 1917C, p. 660; "The general rule deducible from the cases appears to be that where a case has been tried before the court without a jury the admission of incompetent evidence is ordinarily deemed to have been harmless unless it affirmatively appears that the action of the court was influenced thereby. In other words it is presumed that incompetent evidence was disregarded by the court in making up its decision." *Mercer v. Mercer,* 253 N.C. 164, 116 S.E. 2d 443.

In evaluating the challenged evidence, it must be remembered that the prime purpose in offering this evidence was to repel the assertion that if wrong had been done, it was so venerable because of age as to render it immune to attack.

Respondents do not argue that the $15 which Peterson was to have paid for the 240 acres or movant's interest therein was in fact a fair consideration, nor do the other movants assert they are in better position in that respect than Peterson. The order entered in 1942 authorizing the sale became void when vacated because entered on motion of one without authority to act for the owner.

Affirmed.