REVERIE LINGERIE, INC. v. HUGH W. McCAIN, ASA WILLIAMS, JR., WALTER V. ASHLEY, BENJAMIN DANSAVAGE AND INTERNATIONAL LADIES' GARMENT WORKERS' UNION.

(Filed 11 January 1963.)

**1. Principal and Agent § 4—**

Evidence that a person purporting to act as an agent for a nonresident labor union, over a period of years, held meetings for the purpose of organizing or attempting to organize employees into a local of the union, distributed application blanks, etc., that he called a strike of the employees who had joined the union, and that the nonresident union, during the course of the strike, filed with the National Labor Relations Board a complaint charging unfair labor practices, *is held*, sufficient to show that such person was the agent of the union, and further that the union ratified his acts.

**2. Process § 13; Associations § 5—**

Evidence that a nonresident labor union, over a period of years, was active in this State through its agent in organizing or attempting to organize employees into a local of the union and in calling a strike, and that the union, during the strike, filed a complaint for unfair labor practices with the NLRB, *held* sufficient to support a finding that the union was doing business in this State for the purpose of service of process upon it by service upon the Secretary of State. G.S. 1-97(6); G.S. 1-69.1.

**3. Principal and Agent § 4; Evidence § 19—**

While certified copy of the transcript of testimony of certain witnesses in a hearing before the National Labor Relations Board in connection with a union charge of unfair labor practices is incompetent to show the disposition of the charges by the Board, such transcript is competent to show that the union was doing business in this State so as to render it amenable to process.

**4. Appeal and Error § 49—**

The trial court's findings of fact which are supported by competent evidence are conclusive notwithstanding that incompetent evidence may also have been admitted, since it will be presumed that the court disregarded the incompetent evidence in making its findings.

**5. Process § 7—**

Persons who are in this State as defendants in a criminal prosecution sequent to their arrest in another state and waiver of extradition, are immune to service of process in a civil action arising out of the same facts as the criminal proceeding. G.S. 15-79.

**6. Same—**

Where it appears from the record that one of defendants voluntarily came into this State and posted bond in a criminal prosecution, and was not brought into this State by or after waiving extradition, such person is not immune from service of process in a civil action growing out of the same facts as the criminal prosecution.

**7. Appearance § 2—**

Where certain of defendants, while in this State in connection with a criminal prosecution against them, are served with process in a civil action, in which civil action they are arrested, the acts of such defendants in procuring the reduction of the civil arrest bond by consent order invokes the power of the court in the civil action, and such acts constitute a general appearance waiving any defect in the service of process.

BOBBITT, J., dissents in part.

APPEAL by defendants from BICKETT, *J.*, June Civil Term 1962 of ORANGE.

This is a civil action instituted against the International Ladies' Garment Workers' Union (hereinafter referred to as ILGWU, or Union), with its principal headquarters in the City of New York, and the four individual defendants, to recover compensatory and punitive damages for the alleged tortious destruction of the plaintiff's manufacturing plant in Hillsboro, Orange County, North Carolina, on 27 September 1957.

The defendant Union is an unincorporated association which has never certified to the Clerk of the Superior Court of Orange County, nor to the Clerk of the Superior Court of Durham County, the name and address of an agent in this State upon whom process and precepts may be served.

The action was instituted on 23 September 1960 by the issuance of summons, and on the same date the plaintiff procured an order for extension of time to file a complaint until 13 October 1960. The summons was duly served on one Morton Shapiro, alleged to be a business agent for the defendant Union and a resident of Guilford County, North Carolina, and upon the Honorable Thad Eure, Secretary of State, as process agent for the defendant Union pursuant to the provisions of G.S. 1-97 (6).

On 13 October 1960 the complaint was filed and an order issued for the service of the complaint. Service of the complaint and order was

made in the same manner the summons was served. Copies of the summons, the complaint, and the order to serve the copy of the complaint were mailed by the Secretary of State to the defendant Union as required by law.

On 26 September 1960 an order of arrest was issued by the Clerk of the Superior Court of Orange County, directing the Sheriff of Orange County to arrest the individual defendants, and hold them to bail in the sum of $10,000 each. On 27 September 1960 summons was served on each of the individual defendants while they were present as defendants in a criminal trial in the Orange County courtroom on charges allegedly arising out of the same facts alleged in plaintiff's cause of action in this case. Also on 27 September 1960, these individual defendants were arrested by the Sheriff of Orange County pursuant to the order of arrest issued by the Clerk of the Superior Court. Subsequent thereto and on the same day an order was entered by the trial judge, consented to in writing by the defendants, reducing the amount of bail bond from $10,000 to $7,500 each. The defendants Hugh W. McCain, Asa Williams, Jr., and Benjamin Dansavage waived extradition and were in North Carolina as defendants in the criminal case, the results of which are reported in the case of *S. v. Williams, et al,* 255 N.C. 82, 120 S.E. 2d 442, at the time process was served on them. Walter V. Ashley came into the State voluntarily to stand trial in the above criminal action.

On 17 October 1960 the defendant Union entered a special appearance and moved that the return of service of process purportedly served upon it be quashed or stricken and that the action be dismissed.

On 19 August 1961, plaintiff filed a motion to make more definite and certain the defendant Union's motion to quash, and at the September Term 1961 of Civil Court of Orange County, the Honorable Clawson Williams entered an order requiring defendant ILGWU to make more definite and certain its motion to quash the return of service of process.

Thereafter, defendant ILGWU filed its amendment to the motion to quash, making said motion more definite and certain, and praying the court, in ruling upon said motion, to find the facts upon which it bases its ruling.

The defendant Union's motion to quash and the amendment to the motion to quash came on for hearing at the January Civil Term 1962 of Orange County. The matter was heard by the Honorable William Y. Bickett, Judge Presiding, and it was stipulated that the court might enter its order in or out of term or out of the district. At the June Civil Term 1962 of Orange County an order was entered by Judge Bickett finding the facts and denying defendant Union's motion to

quash the return of the service of process. The defendant Union gave notice of appeal.

On 17 October 1960, defendants Hugh W. McCain, Asa Williams, Jr., and Benjamin Dansavage filed a motion to quash the return of service of process in this cause upon the ground that said service was invalid because the defendants when served were in attendance at a criminal trial involving the same matters as alleged in the civil suit and had previously waived extradition to the State of North Carolina to stand trial. The motion was denied and these defendants excepted and gave notice of appeal.

Likewise, the defendant Walter V. Ashley on the same date made a motion to quash the return of service of process on him upon the ground that said service was invalid because when served he was in attendance at a criminal trial involving the same matters as alleged in the civil suit, and that he had, while a resident of the State of Georgia, voluntarily appeared and made bond for his appearance at said criminal trial in order to avoid arrest and extradition to the State of North Carolina on such criminal charges. The court likewise denied Ashley's motion.

All the defendants appeal, assigning error.

*Bryant, Lipton, Bryant & Battle for plaintiff.*
*Ledford & Ledford for defendants McCain and Williams.*
*Sawyer & Loftin for defendants Dansavage and Ashley.*
*Newsom, Graham, Strayhorn & Hedrick for defendant Union.*

DENNY, C.J. The question for determination is whether or not the respective defendants have been legally and properly served with process. If each one of these defendants has been legally and properly served with process in this action, then the Superior Court of Orange County has jurisdiction of each one of them and the denial of the respective motions to quash the return of the service of process must be upheld; otherwise, the ruling must be reversed as to any one or more of the defendants not properly served, unless such defendant has made a general appearance and thereby waived any defect in the service of process.

### APPEAL OF THE DEFENDANT ILGWU

The statutes involved are as follows:

G.S. 1-97 (6), which provides: "Any unincorporated association or organization, whether resident or nonresident, desiring to do business in this State by performing any of the acts for which it was formed, shall, before any such acts are performed, appoint an agent in this State upon whom all processes and precepts may be served, and certify

to the clerk of the superior court of each county in which said association or organization desires to perform any of the acts for which it was organized the name and address of such process agent. If said unincorporated association or organization shall fail to appoint the process agent pursuant to this subsection, all precepts and processes may be served upon the Secretary of State of the State of North Carolina. Upon such service, the Secretary of State shall forward a copy of the process or precept to the last known address of such unincorporated association or organization. Service upon the process agent appointed pursuant to this subsection or upon the Secretary of State, if no process agent is appointed, shall be legal and binding on said association or organization, and any judgment recovered in any action commenced by service of process, as provided in this subsection, shall be valid and may be collected out of any real or personal property belonging to the association or organization.

"Any such unincorporated association or organization, now performing any of the acts for which it was formed, shall, within thirty days from the ratification of this subsection, appoint an agent upon whom processes and precepts may be served, as provided in this subsection, and in the absence of such appointment, processes and precepts may be served upon the Secretary of State, as provided in this subsection. Upon such service, the Secretary of State shall forward a copy of the process or precept to the last known address of such unincorporated association or organization"; and

G.S 1-69.1, which provides: "All unincorporated associations, organizations or societies, foreign or domestic, whether organized for profit or not, may hereafter sue or be sued under the name by which they are commonly known and called, or under which they are doing business, to the same extent as any other legal entity established by law and without naming any of the individual members composing it. Any judgments and executions against any such association, organization or society shall bind its real and personal property in like manner as if it were incorporated. This section shall not apply to partnerships or co-partnerships which are organized to engage in any business, trade or profession."

Section 3 of the Constitution and By-Laws of the ILGWU provides: "The object of the I.L.G.W.U. shall be to obtain and preserve for all workers engaged in the ladies' garment industry just and reasonable conditions of work with respect to wages, work hours and other terms of employment; to secure sanitary surroundings in their places of work and humane treatment on the part of the employers; to aid needy workers in the industry; to cultivate friendly relations between them and generally to improve their material and intellectual standards.

Such objects shall be accomplished through negotiations and collective agreements with employers, the presentation, adjustment and settlement of justified grievances of workers against employers, the dissemination of knowledge by means of publications and lecture courses, through concerted efforts to organize the unorganized workers in all branches of the industry and through all other lawful and peaceable means and methods customarily employed by organized workers, to maintain or better their standards of life."

The defendant Union bases its appeal on the ground that the court below made findings of fact that one Morton Shapiro and others were acting as agents for the defendant Union based on certain acts and declarations of Shapiro. The defendant Union contends that these findings are not supported by competent evidence in that testimony of the acts and declarations of purported agents is not competent to show agency.

In 3 Am. Jur. 2d, Agency, section 355, page 714, it is stated: "Generally, any competent witness may tell what he saw the agent do, though he may not state the inferences drawn by him therefrom. But the fact of agency cannot be established by proof of the acts of a professed agent, unless the acts are of such a character and so continuous as to justify a reasonable inference that the principal had knowledge of them. Where the acts are of such character and so continuous as to justify a reasonable inference that the principal had knowledge of them and would not have permitted them if unauthorized, the acts themselves are competent evidence of agency.

"As a general rule, an agent's authority to bind his principal may not be shown by evidence of the agent's acts. Nor may the extent of an agent's authority be shown by testimony as to his acts and conduct not within the actual or implied scope of the powers granted to him by his principal. But it has also been held that what an agent did with the knowledge and approval of his principal is circumstantial evidence of what the agent was authorized to do." See Strong's North Carolina Index, Vol. 3, Principal and Agent, section 4, page 665, and cited cases.

In *Smith v. Kappas*, 218 N.C. 758, 12 S.E. 2d 693, this Court quoted with approval from 1 Mechem on Agency, section 261, page 185: " ' * * * The agency may be shown by conduct, by the relations and situation of the parties by acts and declarations, by matters of omission as well as of commission, and, generally, by any fact or circumstance with which the alleged principal can be connected and having a legitimate tendency to establish that the person in question was his agent for the performance of the act in controversy,' etc. 'Agency, like any other controvertible fact, may be proved by circumstances.

It may be inferred from previous employment in similar acts or transactions, or from acts of such nature and so continuous as to furnish a reasonable basis of inference that they were known to the principal, and that he would not have allowed the agent so to act unless authorized. In such cases the acts or transactions are admissible to prove agency. But in order to be relevant the alleged principal must in some way directly or indirectly be connected with the circumstances. The agent must have assumed to represent the principal, and to have performed the acts in his name and on his behalf.' "

In the instant case, there is evidence tending to show that Morton Shapiro and others, beginning in March 1957, purporting to act as agents of the defendant Union, met with the management and employees of the plaintiff, at various times and places in Orange and Durham Counties in North Carolina, for the purpose of organizing or attempting to organize the employees of the plaintiff into a local affiliate of the defendant Union and to obtain an agreement with the plaintiff to recognize the defendant Union as the exclusive bargaining agent for the employees of the plaintiff. That Shapiro called and held meetings of the plaintiff's employees, solicited memberships in the defendant Union, distributed applications for membership in the defendant Union, took applications for membership in said Union, and issued buttons having on them "I.L.G.W.U., A.F.L.-C.I.O.," to employees of the plaintiff who joined the defendant Union. That on 3 April 1957 Shapiro called a strike of the employees of plaintiff who had joined the defendant Union and set up a picket line outside the plaintiff's plant in Hillsboro, North Carolina; that the defendant Union rented a house across the street from plaintiff's plant and used it as headquarters for the striking employees; that the defendant Union paid the strikers $20.00 a week and furnished them one meal a day. That the defendant Union during the course of the strike filed with the National Labor Relations Board (hereinafter referred to as NLRB) a complaint charging unfair labor practices on the part of the plaintiff; that defendant Union and Shapiro pressed the charges before the NLRB, and Shapiro in the hearing before the NLRB testified as to his acts on behalf of the defendant Union in connection with the organization of the local Union at plaintiff's plant affiliated with the defendant Union.

The evidence further tends to show that Morton Shapiro and others, representatives of the defendant Union, have taken part in other acts resulting in the organization of a local Union at a plant owned by the Durham Drapery Company and the Croscill Curtain Company of Durham, North Carolina; that the efforts to organize said Union began in the early part of 1960 and resulted in an election in June 1961; that the

activities of the defendant Union in connection with the organization of said local Union, consisting of the employees of the above companies, continued up to and past the date when summons was issued and served in this action; that in connection with its efforts to organize the employees of the Durham Drapery Company and the Croscill Curtain Company the defendant Union lodged a protest with the NLRB charging said employers with unfair labor practices.

We hold that the filing of the complaint with the NLRB charging the plaintiff in this action with unfair labor practices, constituted a ratification of the acts and conduct of Shapiro in his efforts to organize the employees of the plaintiff at its Hillsboro plant. We further hold that the evidence adduced in the hearing below was sufficient to support the finding that at all times herein involved Morton Shapiro was a representative of the defendant Union, and that the findings of fact are sufficient to support the conclusion of law that at the times herein involved the defendant Union has been doing business in North Carolina by performing some of the acts for which it was formed.

The defendant Union assigns as error the admission in evidence in the hearing below of a certified copy of the transcript of the testimony of certain witnesses offered in behalf of the defendant Union in the hearing before the NLRB in connection with the defendant Union's charge of unfair labor practices against the plaintiff. In our opinion, this evidence was not admissible to show what disposition the NLRB made of these charges, but it was admissible to be considered on the question as to whether or not the defendant Union was doing business in North Carolina.

When a trial court finds the facts on matters addressed to it, the court's findings are as conclusive as the verdict of a jury if supported by competent evidence. This is true even though some incompetent evidence may also have been admitted, since it will be presumed that the incompetent evidence was disregarded by the court in making its decision. *In re Simmons,* 256 N.C. 184, 123 S.E. 2d 614; *Mercer v. Mercer,* 253 N.C. 164, 116 S.E. 2d 443.

In our opinion, the ruling of the court below denying the motion of the defendant Union to quash the return of service of process in this cause, should be upheld, and the exception thereto and the assignment of error based thereon are overruled.

### APPEAL BY THE INDIVIDUAL DEFENDANTS

The individual defendants appeal on the ground that service of process on them while they were in the State as defendants in a criminal action, after having waived extradition, is invalid under G.S. 15-79, which provides: "A person brought into this State by or after waiver

of, extradition based on a criminal charge shall not be subject to service of personal process in civil actions arising out of the same facts as the criminal proceedings to answer which he is being or has been returned until he has been convicted in the criminal proceeding or, if acquitted until he has had reasonable opportunity to return to the state from which he was extradited."

It does appear from the record in this case that the defendants Hugh W. McCain, Asa Williams, Jr., and Benjamin Dansavage were arrested in another State and that each one of them did formally waive extradition. Therefore, we hold that under the provisions of G.S. 15-79 they were immune from process in a civil action arising out of the same facts as the criminal proceedings upon which the extradition proceedings were based.

The defendant Walter V. Ashley was not arrested outside of the State of North Carolina and therefore was not brought into this State by or after waiving extradition, but voluntarily came into the State of North Carolina and posted bond on or about 16 August 1960 for his appearance at the criminal term of the Superior Court of Orange County, North Carolina, to commence on 26 September 1960. Therefore, we hold that this defendant was not immune from civil process in an action growing out of the same facts as the criminal proceeding in which he was a defendant. *Hare v. Hare*, 228 N.C. 740, 46 S.E. 2d 840; *White v. Ordille*, 229 N.C. 490, 50 S.E. 2d 499.

The most serious question confronting the defendants McCain, Williams and Dansavage is whether or not in procuring the reduction of the civil arrest bond from $10,000 to $7,500, such action constituted a general appearance and thereby cured any defect in the service of process.

In 5 Am. Jur. 2d, Appearance, section 14, page 490, *et seq.*, it is said: "* * * In determining the character of an appearance, the court will always look to matters of substance, rather than form, and a party's conduct, as well as other circumstances, are to be considered in determining whether he has actually appeared. Thus, a general appearance may arise by implication from the defendant's seeking, taking, or agreeing to take some step or proceeding in the cause, beneficial to himself or detrimental to the plaintiff, other than one to contest jurisdiction over his person only, or from some act done with the intention of appearing and submitting to the court's jurisdiction. The distinction between a special and a general appearance is not so much in the manner in which, or the proceeding by which, the appearance is made, as in the purpose and the effect of the appearance. The test is in the relief asked," citing *In re Blalock*, 233 N.C. 493, 64 S.E. 2d 848, 25 A.L.R. 2d 818; *Smith v. Smith*, 138 W. Va. 388, 76 S.E. 2d 253.

In the case of *In re Blalock, supra,* this Court said: "An appearance merely for the purpose of objecting to the lack of any service of process or to a defect in the process or in the service of it, is a special appearance. In such case the defendant does not submit his person to the jurisdiction of the court. 3 Am. Jur. 783.

"On the other hand, a general appearance is one whereby the defendant submits his person to the jurisdiction of the court by invoking the judgment of the court in any manner on any question other than that of the jurisdiction of the court over his person. 3 Am. Jur. 782, 6 C.J.S. 66, McIntosh N. C. P. & P. 323. *Scott v. Life Asso., supra* (137 N.C. 515, 50 S.E. 221); *Motor Co. v. Reaves, supra* (184 N.C. 260, 114 S.E. 175).

"A general appearance waives any defects in the jurisdiction of the court for want of valid summons or of proper service thereof. * * *"

In *Motor Co. v. Reaves,* 184 N.C. 260, 114 S.E. 175, it is said: "An appearance for any other reason other than to question the jurisdiction of the court is general."

In *Smith v. Smith, supra,* the Supreme Court of West Virginia said: "It is well settled that no authority is needed for the proposition, that an appearance in a suit or action for any purpose other than one to test the jurisdiction of the court, or the sufficiency and service of a process, is a general appearance."

It is contended by these individual appellants that there is nothing in the record to show that they or their counsel made any motion in connection with the procurement of the order reducing the civil arrest bond required by each of them from $10,000 to $7,500. Likewise, there is nothing in the record to indicate or from which it may be inferred that the order was made *ex mero motu.*

Probably what happened was this: Counsel for the plaintiff and counsel for the defendants agreed privately to present an order to the court consenting to the reduction of the bail bonds. The court signed the order which had been consented to in writing by each of the four defendants and by counsel of record for the plaintiff.

In cases of civil arrest the statute, G.S. 1-417, among other things, provides: "A defendant arrested (in a civil action, G.S. 1-409) may at any time before judgment apply on motion to vacate the order of arrest or to reduce the amount of bail."

We do not think it is material whether a formal motion was made by these defendants or their counsel to reduce the amount of bail. When the consent order authorizing the reduction of bail, as authorized in G.S. 1-417, was signed, these defendants invoked the power of the court in their behalf and for their benefit which, in our opinion, constituted a general appearance and waived any defect in connection with the service of process.

The order of the court below refusing to sustain the defendants' motions to quash the return of service of process on them will be upheld.

In view of the fact that the appellants have set out 94 assignments of error in the record, it has not been feasible to discuss them *seriatim*. However, we have discussed what we deem to be the pertinent questions presented on the appeal.

The orders from which this appeal was taken are

Affirmed.

BOBBITT, J., dissents as to McCain, Williams & Dansavage.